IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMBER L. MCLELLAN, | ) |
| | ) |
|           Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-20-119-RAW-SPS |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
|           Defendant. | ) |

**REPORT AND RECOMMENDATION**

The claimant Jessica R. Samuels requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. She appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

[s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human*

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Services*, 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."  *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was thirty-nine years old at the time of the administrative hearing (Tr. 33, 209).  She earned her GED and has previously worked as a parts clerk and nurse assistant (Tr. 24).  The claimant alleges she has been unable to work since May 23, 2017, due to post-traumatic stress disorder (PTSD), anxiety disorder, diabetes, nerve problems, and menopause (Tr. 255).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on October 4, 2017.  Her applications were denied.  ALJ Bill Jones conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated September 30, 2019 (Tr. 15-26).  The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal.  *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  He found that the claimant had the residual functional capacity ("RFC") to perform a full range of work

at all exertional levels but that she had the non-exertional limitations of: simple, routine, and repetitive tasks involving only simple work-related decisions with few, if any workplace changes, as well as no more than incidental contact with co-workers and supervisors and no contact with the general public (Tr. 19). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *e. g.*, router and kitchen helper (Tr. 24-25).

## Review

The claimant contends that the ALJ erred by: (i) failing to find her peripheral neuropathy to be a severe impairment; (ii) improperly assessing her RFC, which affected the jobs she could perform; and (iii) improperly identifying jobs she could perform at step five. Specifically as to the RFC assessment, the claimant asserts that the ALJ failed to account for additional limitations related to her peripheral neuropathy and improperly discounted the opinion of consultative examiner, Dr. Theresa Horton. The undersigned Magistrate Judge finds these contentions unpersuasive for the following reasons, and the decision of the Commissioner should therefore be affirmed.

The ALJ determined that the claimant had the severe impairments of PTSD and unspecified depressive disorder, as well as the non-severe impairments of hyperlipidemia and diabetes mellitus with neuropathy (Tr. 17-18). The relevant medical evidence reflects the claimant received treatment at Mercy Clinic for her diabetes, as well as her anxiety, during the relevant time period. A June 13, 2017 treatment note stated that the claimant mainly presented for anxiety, noting personal stressors in her family life, but also noting

-4-

the claimant had peripheral neuropathy for which she was to continue her medication (Tr. 351-353). The claimant's peripheral neuropathy was noted to be uncontrolled on February 28, 2017, prior to her May 2017 alleged onset date (Tr. 359). Treatment notes indicate that the claimant was not always compliant with her medications or checking her blood sugar levels (Tr., *e. g.*, 502, 507).

On February 13, 2018, Dr. Theresa Horton, Ph.D. conducted a diagnostic interview and mental status examination of the claimant (Tr. 496-499). Dr. Horton assessed the claimant with chronic PTSD and unspecified depressive disorder (Tr. 499). Upon exam, she noted that the claimant had a generally appropriate appearance and, *inter alia*, she had appropriate judgment and fair insight, although she was predominantly anxious (Tr. 498-499). Dr. Horton found that the claimant appeared capable of understanding, remembering and managing most simple and complex instructions and tasks, but that she may not adjust well in fast-paced areas and/or densely populated areas (Tr. 499).

On March 15, 2019, the claimant presented to the emergency room with complaints of anxiety, which was classified as a panic attack (Tr. 581-582). The claimant was treated and released (Tr. 582). In July 2019, she reported worsening peripheral neuropathy that had worsened her anxiety (Tr. 584). She reported that she had not been checking her blood sugars or regularly taking her medications, and her medication for neuropathy was restarted (Tr. 584-587).

State reviewing physicians initially determined that the claimant's impairments were nonsevere (Tr. 58, 67). On reconsideration, Dr. Walter Bell again found that the claimant's *physical* impairments were non-severe (Tr. 79-80). Dr. Gary Lindsay, Ph.D.,

however, found that the claimant's anxiety was a severe impairment, and concluded that she could understand, retain, and perform simple and some complex tasks on a sustained basis, but that she had difficulty with interpersonal relations due to anxiety and would perform better in jobs with limited interaction with co-workers, although she could handle normal supervision in a setting where she could work mostly alone. Additionally, he stated that she would not interact well with the public, but that she could adjust to the mental demands of the workplace and carry out instructions (Tr. 86).

In his written opinion at step four, the ALJ summarized the claimant's administrative hearing testimony, as well as the medical evidence of record. As relevant to this appeal, the ALJ noted the treatment records both prior to and following her alleged onset date, noting the records where she had foot exams within normal limits and where the claimant reported not taking her medications and then restarting them (Tr. 20-21). Additionally, he acknowledged the claimant's pain and symptoms, but found they were not disabling and were well-controlled when she took her medications (Tr. 22). He noted that she had been noncompliant with treatment, and that she reported medications helped her symptoms when she took them (Tr. 22-23). In evaluating the state reviewing physician opinions, he agreed with Dr. Bell that the claimant did not have a severe impairment but found Dr. Lindsay's opinion was only somewhat persuasive and further limited her to unskilled work (as opposed to semi-skilled work) based on the medical evidence in the record (Tr. 23). He further found Dr. Horton's assessment persuasive, but again further limited the claimant to unskilled work based on the medical evidence (Tr. 24).

The claimant first asserts that the ALJ erred failing to find her peripheral neuropathy to be a severe impairment. Assuming *arguendo* that this *was* error by the ALJ, such error was nevertheless harmless because the ALJ *did find* the claimant's PTSD and unspecified depressive disorder to be severe impairments, which obligated the ALJ to then consider *all* of the claimant's impairments (severe or otherwise) in subsequent stages of the sequential evaluation, including the step four assessment of the claimant's RFC. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. . . . . [T]he ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [citations omitted].

Next, the claimant contends that the ALJ erred in assessing her RFC. More specifically, she claims the ALJ failed to consider or account for her peripheral neuropathy, and in evaluating Dr. Horton's opinion. An RFC has been defined as "what an individual can still do despite his or her limitations." Soc. Sec. R. 98-6p, 1996 WL 374184, at *2 (July 2, 1996). It is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Id.* This includes a discussion of the "nature and extent of" a claimant's physical limitations including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or

-7-

postural functions, such as reaching, handling, stooping, or crouching)." 20 C.F.R. §§ 404.1545(b), 416.945(b). Further, this assessment requires the ALJ to make findings on "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis[,]" and to "describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." Soc. Sec. R. 98-6p, 1996 WL 374184, at *1, 7. Here, the ALJ has fulfilled his duty. The claimant nevertheless asserts that the evidence does not support a finding that she can perform work at the assigned RFC level in light of her peripheral neuropathy.

Contrary to claimant's arguments, however, the ALJ discussed all the evidence in the record and his reasons for reaching the RFC. *Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). The evidence does not reflect a limitation of time for how long the claimant can stand or walk, and the ALJ clearly considered her continuing peripheral neuropathy by discussing it at several points at step four and noting how it informed his decision. Furthermore, she has pointed to no medical documentation providing further limitations. Because she points to no evidence other than her own assertions, the Court declines to find an error here. *Cf. Garcia v. Astrue*, 2012 WL 4754919, at *8 (W.D. Okla. Aug. 29, 2012) ("Plaintiff's mere suggestion that a 'slow' gait might adversely affect his ability to perform the standing and walking requirements of light work is not supported by any authority.").

In this case, the ALJ noted and fully discussed the findings of all of the claimant's various treating, consultative, and reviewing physicians, including the records related to the claimant's peripheral neuropathy. The Court finds that when all the evidence is taken into account, the conclusion that the claimant could perform a full range of work with the aforementioned limitations is well supported by substantial evidence. The undersigned Magistrate Judge finds no error in the ALJ's failure to include any additional limitations in the claimant's RFC. *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.").

The undersigned Magistrate Judge turns next to the ALJ's assessment of Dr. Horton's opinion. For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. § 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary

requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

  The Court finds that the ALJ's treatment of Dr. Horton's opinion was appropriate. He noted Dr. Horton's statements and specifically found them persuasive, then *further limited* her RFC to unskilled work rather than semi-skilled work. Thus, the ALJ's opinion was sufficiently clear for the Court to determine the weight he gave to the opinion, as well as sufficient reasons for the weight assigned. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case."). The undersigned Magistrate Judge thus finds that the ALJ properly considered Dr. Horton's opinion, along with all the other opinions in the record in concert with the medical evidence in accordance with the proper standards.

  Finally, the claimant asserts that the ALJ's failure to consider the additional limitations as discussed above resulted in an error in the identification of jobs she can perform at step five. But as discussed above, the Court finds that substantial evidence supports the ALJ's determination that the claimant can perform the above-listed RFC. The

final contention is therefore without merit. In essence, the claimant asks the Court to reweigh the evidence in her favor, which the Court cannot do. *See Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000) ("In conducting our review, we may neither reweigh the evidence nor substitute our judgment for that of the Commissioner.") (*citing Casias*, 933 F.3d at 800).

The ALJ specifically noted every medical record available in this case, gave reasons for his RFC determination and ultimately found that the claimant was not disabled. *See Hill*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard*, 379 F.3d at 949). This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."). (citations omitted). Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that

the Court AFFIRM the decision of the Commissioner.  Any objections to this Report and Recommendation must be filed within fourteen days.  *See* Fed. R. Civ. P. 72(b).

**DATED** this 31st day of August, 2021.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**